IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | Case No. 3:22-MJ-00095-KFR |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| MATTHEW C. CALDERON<br>CHRISTOPHER JAMES SANTANA | ) | |
| Defendant. | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Britt Damon, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state that:

**I.  BACKGROUND AND EXPERIENCE OF AFFIANT**

1. I am an investigative or law enforcement officer of the United States, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.

2. As part of my duties as a DEA Special Agent, I investigate drug trafficking organizations, including their smuggling routes and the techniques that they use for transporting controlled substances such as marijuana, cocaine, methamphetamine, and heroin. My duties include investigating drug trafficking organizations; interviewing witnesses, victims and suspects; identifying people involved; developing probable cause for cases; handling and processing various types of evidence; and assembling cases for prosecution. I have conducted or participated in numerous investigations relating to the use, possession, manufacture, and

trafficking of controlled substances; and I have become familiar with devices, paraphernalia, techniques, and practices used by people engaged in the use, possession, manufacture, and trafficking of controlled substances. I have also conducted or participated in investigations which have resulted in the seizure of marijuana, marijuana grow operations, cocaine hydrochloride, cocaine base (crack cocaine), opium, heroin, methamphetamine, MDMA (ecstasy), prescription medications, firearms, cellular phones, surveillance systems, cameras, memory cards, computers, documents, money, and precious metals. I have also conducted numerous interviews of people involved in the use, possession, manufacture, and trafficking of controlled substances which have added to my knowledge of the illegal drug culture in Alaska.

## II.  PURPOSE OF AFFIDAVIT

This Affidavit is presented in support of a criminal complaint against and request for the issuance of arrest warrant against Matthew Christopher CALDERON and Christopher James SANTANA. There is probable cause to believe that they knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21 United States Code, Sections 841(a)(1) and (b)(1)(A). I have not set forth in this affidavit all of the facts and sources of information of which I am familiar that support my assertion of probable cause.

## III.  PROBABLE CAUSE STATEMENT

1.  Law enforcement officers have been surveilling Matthew CALDERON's residence at 4110 Debarr Road, Space I-28, Anchorage, AK. They have observed CALDERON repeatedly engaged in activities consistent with drug trafficking. They have also repeatedly observed him interacting with known and suspected drug traffickers. Travel records show that CALDERON frequently travels to Los Angeles, CA; a known source

location of narcotics for drug traffickers in Alaska.

2. Based on this surveillance and other information, law enforcement officers obtained Federal Search Warrant 3:22-mj-00086-MMS for CALDERON's residence at 4110 Debarr Road, Space I-28, Anchorage, AK. Officers executed this search warrant on February 2nd, 2022.

3. When law enforcement officers approached CALDERON'S residence to execute the search warrant, as they began to knock on the door and announce their presence, one occupant, attempted to flee by jumping out of a back window and was subsequently detained. This action suggested to the officers that the residence had surveillance cameras that its occupants were monitoring. A second male matching Christopher SANTANA's description was observed going to the back window as well, though when addressed by officers, the male fled back to the interior of the residence.

4. The officers proceeded to knock at the front door and announced loudly "Police" and "Search Warrant". No one answered the door, though the officers heard people moving around inside and an interior light turned on in the living room area. The officers then breached the residence's front door and the living room was empty, though a game was on the TV. There were nine persons total in the residence, Matthew CALDERON and Christopher SANTANA were subsequently identified as two of the occupants.

5. CALDERON was observed going back and forth between a bedroom at the center of the residence and the residence's bathroom. Officers also observed an unknown person exchanging items with CALDERON from across the hallway when CALDERON was in the bathroom. CALDERON was subsequently ordered out of the bathroom and arrested. In the bathroom, officers located approximately 2001 gross grams of suspected methamphetamine

sitting in the bathtub. The suspected methamphetamine was wrapped in individual heat-sealed bundles and contained within a larger dark gray vacuum seal bag. Additionally, they found suspected cocaine residue around and in the toilet.

6. SANTANA was found in the center bedroom, with several others that would not open the bedroom door; the same bedroom that CALDERON was seen running from on trips to the drug-laden bathroom. SANTANA refused to comply with police instructions and was ultimately arrested after he was ordered out of the center bedroom. During a search of SANTANA's person, officers located a rubber-banded stack of US currency (USC) in his pants pocket. SANTANA had approximately $55 USC loose in his pockets and a stack of $100 bills totaling $6,700 USC, which was held together with a blue rubber band at each end of the stack. I know from my training and experience that narcotics traffickers often band drug proceeds in this manner and that traffickers above the retail level often have or convert drug proceeds to $100 bills. When officers attempted to identify SANTANA, he initially provided them with a false name and phone number. SANTANA said in a post-arrest interview that he had been sleeping in the residence's living room and had only been in town a few days. In the living room, officers located a loaded pistol in a black bag on the couch.

7. In the center bedroom where SANTANA was found hiding, and CALDERON was seen running in and out of, officers located wet packaging materials hidden under a mattress. The packaging was consistent with plastic wrapping typically found on kilogram quantities of drugs. Based on the timing of CALDERON'S actions and the fact that this packaging was wet, it appeared that CALDERON likely ran back and forth between the center bedroom and bathroom in order to dump narcotics from this packaging into the tub or toilet. Officers who detained CALDERON noted that he was wet and out of breath. Officers

also found an undetermined amount of US currency in the center bedroom.

8. An elderly woman with limited mobility who suffers from dementia, resides in the center bedroom with her two male family members who are associates of CALDERON. The two male relatives refused to comply with law enforcement instructions initially, but were subsequently ordered out of the room or near its entrance. Two additional persons were ordered out of the center bedroom. In the kitchen, officers located an AR style rifle loaded with a drum magazine and several loaded pistols. In the back bedroom, they located plastic baggies with approximately 86 gross grams of suspected cocaine and an undetermined amount of US currency.

9. Ricardo SOSA was found hiding in a bedroom at the front of the residence and was ordered to come out. He did not comply immediately but was subsequently arrested. In the front bedroom where SOSA was hiding, officers located a money counter, scales with residue, an unmarked bottle containing hydrocodone pills, cutting agents, two baggies of suspected fentanyl (approximately 86 gross grams and 34 gross grams), packaging materials from bulk narcotics (plastic wrap and baggies), and an undetermined amount of US Currency. SOSA was interviewed after his arrest, and he said he had been napping in the front bedroom where he was found. He also stated that he had only been at the residence a few days and had been sleeping on the couch.

10. Based on my training and experience, I know that the above described items found in CALDERON'S residence are indicative of drug distribution.

11. SANTANA and SOSA advised they live in Los Angeles and were visiting Alaska to go skiing or snowboarding and to shop for antiques and clothing. SANTANA and SOSA did not know where to ski or snowboard in Alaska and admitted they had not done so.

SANTANA and SOSA also admitted to staying with CALDERON for several days. SANTANA and SOSA made conflicting statements on when they arrived in Alaska and when they planned to depart Alaska. There were no antiques located in CALDERON's residence. Furthermore, in my training and experience, Anchorage, Alaska is not a common destination for shopping trips, particularly by people from Los Angeles, but Los Angeles is a common source of drugs brought to Alaska.

12. A search of one of the phones located in the residence during the search warrant revealed that "CJ", a nickname given for Christopher James SANTANA by people in the residence at the time of arrest, is an associate of CALDERON. The text string showed that on or about February 2, 2022 a group of 8 people, including "June" (aka Matthew CALDERON) and "CJ" were arranging travel to New York. In that same phone, a separate text string occurring on or about December 27th, 2021 that indicated that an unknown person wanted to obtain more narcotics. The unknown person stated it was for "another person who be sellin them". The unknown person later stated that the seller "knows they fire, that's why he finna re up off the ones you got". He then says the new seller knows the quality "from CJ the nigga I was with last night". Based on my training and experience, I believe this conversation is referring to counterfeit pills containing fentanyl, which CALDERON and his associates are known to sell.

13. A second person detained on scene stated to officers that SOSA and SANTANA are CALDERON's associates. When asked if SANTANA and SOSA brought the narcotics to CALDERON, the individual stated that they know CALDERON obtains narcotics from Los Angeles and that SANTANA and SOSA are from that location, so this person believes them to be CALDERON's sources of supply.

Further the affiant sayeth naught.

Respectfully submitted,



BRITT DAMON
Digitally signed by BRITT DAMON
Date: 2022.02.05 13:51:30 -09'00'

Britt Damon
Special Agent, DEA

Telephonically sworn to, and electronically signed.
on February 5, 22

_____
UNITED STATES MAGISTRATE JUDGE